"The condition on which Henry Williams and Daniel Wood settled is this: The said Wood is to pay to the said Williams $360, $100 of which sum was paid at or before the signing of this, and the balance to be paid as soon as they can conveniently get James Brooks to testify what money was returned by him to the said Wood for George Williams out of the $207, which sum Williams says he received, and sent it back by said Brooks to said Wood. Now, if the said Brooks shall say that he returned the whole of the $207, then the said Wood is to pay said Williams $260, and whatever he says he returned less than $207, to be deducted out of the $260. "D. W. [L. S.] "H. W. [L. S.]"
Brooks, on being asked, said he had returned but $100. The plaintiff contended that Brooks had returned to Wood $200, whereupon this action was brought. On the trial Brooks swore that he returned but $100. The plaintiff proved that the defendant and Brooks both had acknowledged that $200 had been returned by the latter. This evidence was objected to by the defendant, but was admitted by the court. The plaintiff also proved by several witnesses that Wood had received $200 by the hands of Brooks.
His Honor, Judge Daniel, charged the jury that if they believed the evidence, they ought to find for the plaintiff. A *Page 61 
verdict being returned for the plaintiff, a rule for a new trial discharged and judgment entered up upon the verdict, the defendant appealed.
It appears to me that the intention of the parties to this covenant does not admit of any reasonable doubt.
The defendant undertakes to pay the plaintiff the balance due to him upon the settlement of their accounts. The precise sum due depended upon the amount paid the defendant through the hands of Brooks, and on account of George (85) Williams, who had borrowed $200 from the defendant. If this whole sum had been repaid to the defendant, he then owed the plaintiff $260; and that the fact was so, was alleged by the plaintiff. If a less sum than the $200 had been repaid, then the balance due the plaintiff would be lessened in proportion; and this was contended for on behalf of the defendant.
But as Brooks was known by both parties to have been the instrument of payment, it was natural to refer to him, in the first place, to ascertain the amount, and it could not have entered into the contemplation of either party that his assertion as to the amount should be conclusive upon them, if they could show that either his memory or his integrity had abandoned him. This is evident from the words themselves, which are, "as soon as they can conveniently get James Brooks to testify what money was returned," which is equivalent to saying, as soon as they can get him to give evidence of the sum returned. As a witness, his evidence would be open to examination, and might be opposed by other testimony; nor would Wood have been bound by his assertion, if it had charged him with the receipt of the whole sum, any more than Williams is when it charges him with less.
Taking this to be the clear intent of the parties, apparent upon the instrument, is right, according to the established rules of law, which are in this case the dictates of natural justice, to be so construed as to correspond with that intention. A performance according to the letter, which contravenes the spirit of a covenant, is not a legal performance; as where the condition of a bond was that the defendant should, before a certain day, deliver to the plaintiff a bond wherein the plaintiff was bound to the defendant. If before that day the defendant sues the plaintiff on the bond, and recovers, though on the day he delivers *Page 62 
(86) it up, yet it is no performance, for it could not be the intention of the parties that it should be put in suit.Teat's case, Cro. Eliz., 7.
And if the construction were even doubtful, the rule of law is that it is to be taken in that sense which is most strong against the covenantor and beneficial to the other party; as a covenant to pay a certain sum perannum, without saying for how long, it was held it should be for the life of the plaintiff. 1 Lev., 102.
I think it follows irresistibly from these premises that if the defendant had been allowed to prevail on the plea of "covenants performed," by proving that Brooks had said he had returned only $100, and all inquiry had been shut out as to the fact from other sources, it would not have been a real and faithful performance of the covenant, but evasive and illusory.
The law will not permit men thus to escape from their deliberate engagements, but uniformly exacts from them such a performance as will satisfy the true spirit and intention of the contract. Of this, the case of Griffith v. Goodhand, Tho. Raym., 464, furnishes a strong illustration. There the covenant was to deliver to the plaintiff seven parts of all the grains made in the defendant's brew house; and one breach assigned was that the defendant did put divers quantities of hops into the malt of which the grains were made, by reason whereof they were spoiled and became unprofitable to the plaintiff. After a verdict for plaintiff, there was a motion in arrest of judgment, that this breach is out of the articles, which contain no covenant not to put hops in the grains. But the court held clearly that as it was the intention of the parties that the plaintiff should have the grain for the use of his cattle, whatever rendered them unfit for that use was a violation of the spirit of the contract, though within the letter. So if I covenant that I will leave all the timber which is growing on the land I hire, upon the land at the end of the time, if I cut it down, though I leave it on the land, it is a breach of my covenant. So (87) if I covenant to deliver so many yards of cloth, and I cut it in pieces, and then deliver it, it is a breach of my covenant, for the law reprobates all such evasions in fraud of that good faith so essential to the welfare of society. So, as the design of this covenant was to enforce the payment of the sum due from Wood, the finding of a less sum in obedience to the testimony of Brooks, opposed by the witnesses and the defendant's own acknowledgment, would be a departure from common honesty. *Page 63 
The recovery in this case has been resisted on the ground that Brooks was agreed upon by the parties as an arbitrator to decide upon the sum paid by him to Wood, and that his decision was to be conclusive upon the parties.
But the analogy strikes me as wholly imperfect, for arbitrators are called upon to exercise their judgment on the subject in dispute, to enable them to do which they hear testimony, and decide upon the impression thus made upon their minds by the communication of knowledge from others. But here no judgment was necessary to be exercised. Either one sum or the other had been paid to Wood, and it required only a simple effort of memory by Brooks to ascertain which sum. If the name of the person returning the money had not been recollected, then the covenant would have bound Wood to pay the $260 or not, according as evidence should be given of his receiving the $200.
Then the insertion of the name of Brooks, evidently made in the very reasonable expectation that he would remember correctly, and state truly, the real sum, cannot possibly change the nature of the contract. In principle, it resembles the case where a man says, "Prove the debt, and I will pay you; or prove the debt by the person paying the money, and I will pay it." In either case it would be competent for the plaintiff to prove it on the trial of the action, and, consequently, for (88) the defendant to introduce counter-evidence. 1 Comyn Dig., 140.
The cases in the court of equity cited by the defendant's counsel proceed upon the principle that there is to be an exercise of judgment by the person chosen by the parties to the contract. Thus if an agreement be made for a sale according to the valuation of two persons, one chosen by each party, the court will not entertain a bill for specific performance, praying that the valuation should be otherwise ascertained. Why? Because the parties have confined to specific individuals, a confidence upon a subject interesting to them, respecting which those individuals are to exercise their judgment. The court will not, therefore, transfer to a stranger that confidence which was reposed in others under a belief of their peculiar fitness to discharge the duty. This would be making another agreement for the parties, and not executing that which they had made. Upon the whole case my opinion is that the law has been rightly administered and that there ought not to be a new trial.